IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

JONATHAN ROMAN RIVERA, et al.

    Plaintiffs,

    v.

JOSE MIRANDA DIAZ, et al.

    Defendants.

Civil Action No. 09-1919 (GAG)

**OPINION AND ORDER**

Plaintiff in this matter, Jonathan Roman Rivera ("Rivera" or "Plaintiff"), commenced this action seeking compensatory money damages against the named defendants for alleged violations of his constitutional rights stemming from his investigation, prosecution, and ultimately, conviction for the murder of Adam Joel Anhang Uster. Post-sentencing evidence was provided to Commonwealth authorities by the federal government demonstrated his factual innocence and all charges were ultimately dismissed. The action was brought pursuant to 42 U.S.C. §§ 1983, 1986 and 1988, for alleged violations of Plaintiff's rights under the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. Plaintiffs further invoked the supplemental jurisdiction of the court to hear and decide claims arising under the laws of Puerto Rico under Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141. In addition, several of Plaintiff's family members bring federal and state law claims against defendants for their own damages resulting from the actions directed against Rivera.

Plaintiff brought suit against Jose Miranda-Diaz, an agent in the Puerto Rico Criminal Investigations Corp. who participated in the investigation; Robert Figueroa-Betancourt, Richard Roe, John Doe and Police Officers A, B, and C, as participants in the investigation (collectively "Officer Defendants"); Police Officers D, E, and F, as responsible for the hiring, training and supervision of

**Civil No. 09-1919 (GAG)**                                                     2

the co-defendants; and Pedro A. Toledo-Davila, Superintendent of the Puerto Rico Police Department ("PRPD") (collectively "Supervising Officer Defendants"). Plaintiff also brought suit against Milagros Goutin, Manuel Nuñez-Corrada, Jimara Gabriel Ramos Maysonet, Sonia Otero, who were state prosecutors for the Commonwealth of Puerto Rico at the time of the complaint; Alma Mendez, Jose Capo, and Attorneys X, Y, and Z, as the district attorneys in charge of supervising the prosecutors assigned to Rivera's case; and Roberto Sanchez-Ramos, Secretary of Justice (collectively "Prosecuting Defendants").

Presently before the court is defendants' motion to dismiss (Docket No. 25). The motion was timely opposed by Plaintiff (Docket No. 35). After reviewing the pleadings and pertinent law, the court **GRANTS in part** and **DENIES in part** defendants' motion to dismiss.

**I.      Standard of Review**

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

In sum, when passing on a motion to dismiss the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and

**Civil No. 09-1919 (GAG)**                              3

common sense. Id. at 1949-50 (citing Twombly, 550 U.S. at 555-56). In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. Iqbal, 129 S. Ct. at 1950.

**II.     Relevant Factual & Procedural Background**

On September 22, 2005, Mr. Adam Joel Anhang Uster ("Anhang") was murdered. Following this incident, the PRPD launched an investigation to uncover details surrounding Anhang's murder. Jose Miranda Diaz ("Diaz"), who is part of the PRPD Criminal Investigations Corps ("CIC"), was assigned to investigate this murder. During his investigation, Diaz received specific information from various sources informing him that Uster's murder was committed by Alex Pabon Colon ("Pabon"). At that time he also received a photograph of Colon as well as a phone number where Colon could be reached. He further received information from other agents of the CIC and through independent investigation that Plaintiff was not involved in Uster's murder.

On October 12, 2005, allegedly concealing the existence of all of the aforementioned intelligence, Defendants arrested Plaintiff and charged him with Anhang's murder. Prior to his criminal trial, Plaintiff's attorney filed a discovery motion under Rule 95 of the Puerto Rico Rules of Criminal Procedure, P.R. Laws Ann., tit. 34 § App. II, R. 95, which requires the District Attorney's Office to produce all existing material evidence, general and exculpatory, that would assist the defense in the preparation of its case. None of the exculpatory evidence that the District Attorney's Office had obtained in their investigation was produced to the defense.

Plaintiff's trial was held from September 17, 2007, until October 10, 2007. Plaintiff was found guilty of murder in the first degree and was convicted to ninety-nine years for the murder charge and six years for the firearms violation, both sentences to be served concurrently.

On June 4, 2008, the U.S. Attorney's Office filed charges for murder and conspiracy against Alex Pabon Colon and Aurea Vasquez Rijos for the murder of Uster. On June 6, 2008, the U.S. Department of Justice notified and made a full disclosure to the Commonwealth of Puerto Rico

**Civil No. 09-1919 (GAG)**                                4

Secretary of Justice, informing that Colon had voluntarily confessed to murdering Uster. The letter further stated that Plaintiff was innocent of this crime. As a result of this information, a hearing was scheduled for June 8, 2008.

Prior to the hearing, and as a result of the charge filed against Colon and Aurea Vazquez, Plaintiff filed a motion for a new trial. During the June 8th hearing, the Commonwealth of Puerto Rico Department of Justice ("PRDOJ") insisted the Plaintiff was, in fact, guilty and convicted as charged. The PRDOJ stated that they would initiate an investigation regarding these allegations made by the U.S. Department of Justice. Pending this investigation, Plaintiff was released on bail but was held under the supervision of the Commonwealth of Puerto Rico Pre-Trial Services Office.

On August 13, 2008, a second hearing was scheduled but was continued as the Commonwealth alleged that they had not concluded their investigation. On September 15, 2008, the PRDOJ requested that all charges filed against Plaintiff be dismissed.

**III.   Discussion**

In their opposition (Docket No. 35), Co-Plaintiffs moved to voluntarily dismiss their Puerto Rico state law claims under the provisions of the Commonwealth of Puerto Rico Constitution and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141., without prejudice. Plaintiff also moved to voluntarily dismiss his claims under the Fifth and Ninth Amendments with prejudice. In accordance with these requests, the court **DISMISSES** Co-Plaintiffs' state law claims without prejudice and **DISMISSES** Plaintiff's Fifth and Ninth Amendment claims with prejudice.

   *A.     Co-Plaintiffs' § 1983 claims.*

Defendants contend that Co-Plaintiffs' claims under § 1983 must be dismissed for failure to state a claim because Co-Plaintiffs lack standing to sue under § 1983 in their personal capacities. Co-Plaintiffs sole basis for their claims is derived from the alleged unconstitutional actions perpetrated against their family member, Jonathon Roman Rivera.

A § 1983 cause of action imposes liability on state actors for conduct that subjects, or causes to be subjected, the *complainant* to a deprivation of the rights protected under the Constitution and

**Civil No. 09-1919 (GAG)**                                              5

laws of the United States. See 42 U.S.C. §1983. "First Circuit case law holds that . . . family members cannot recover in an action brought under § 1983 for deprivation of rights secured by the federal constitution *for their own damages* . . . unless the unconstitutional action was aimed at the familial relationship." Robles-Vasquez v. Tirado Garcia, 110 F.3d 204, 206 n.4 (1st Cir. 1997)) (emphasis in original). "The [Supreme] Court has never held that governmental action that affects the [familial] relationship only incidentally . . . is susceptible to challenge for a violation of due process." Valdivieso Ortiz v. Burgos, 807 F.2d 6, 8 (1st Cir. 1986).

Because Co-Plaintiffs § 1983 claim is based solely upon the emotional effect that Plaintiff's alleged false arrest, incarceration, and prosecution had on his family members, Co-Plaintiffs do not have standing to assert a valid claim under § 1983. See Pittsley v. Warish, 927 F.2d 3, 8 (1st Cir. 1991) (recognizing that "[o]nly the person toward whom the state action was directed, and not those incidentally affected, may maintain a § 1983 claim.") Co-Plaintiffs have failed to allege that any acts of the appearing co-defendants were directed at them or were carried out to interfere with Co-Plaintiffs' familial relationships. The court finds that Co-Plaintiffs lack standing to bring a valid claim under § 1983 and therefore **DISMISSES** all of Co-Plaintiffs' § 1983 claims with prejudice.

### B. *Rivera's § 1983 Claims Against the Prosecuting Defendants*

Plaintiff Rivera alleges that the Prosecuting Defendants, the various state prosecutors and supervising attorneys in charge of his prosecution, failed to exercise their legal duties by intentionally and recklessly failing to properly corroborate information they had received from investigators prior to filing charges against Plaintiff. He further alleges that through concealment and deception, these prosecutors blatantly violated Plaintiff's constitutional rights by knowingly withholding exculpatory evidence pertinent to his defense. Plaintiff alleges that these acts, all done in violation of his rights under the Fourth, Eight, and Fourteenth Amendments of the U.S. Constitution, resulted in his ultimate conviction and incarceration.

Defendants contend that Plaintiff's § 1983 claims against the above-named defendants must be dismissed, as Plaintiff has failed to state a claim upon which relief can be granted. Defendants aver that absolute immunity bars suits based on individual liability against prosecutors for acts

**Civil No. 09-1919 (GAG)**                    6

committed while performing prosecutorial duties.

The Supreme Court has held that "the same considerations of public policy that underlie the common-law rule of absolute immunity of a prosecutor from a suit for malicious prosecution likewise dictate absolute immunity under [§] 1983." Imbler v. Pachtman, 424 U.S. 409, 409 (U.S. 1976). In analyzing circuit decisions, the Imbler court held that the circuit courts were "unanimous in holding that a prosecutor enjoys absolute immunity from [§] 1983 suits for damages when he acts within the scope of his prosecutorial duties." 424 U.S. at 420.[1] The Court defined such duties as those acts "intimately associated with the judicial phase of the criminal process." Id. at 430. The First Circuit has recognized that the Imbler decision implicitly acknowledged that a prosecutor's discretion in determining what evidence must be disclosed as exculpatory is considered a "prosecutorial duty," and thus such determinations are protected by absolute immunity. See Reid v. State of N.H, 56 F.3d 332, 337 (1st Cir. 1995) (citing Imbler, 424 U.S. at 425-26). Furthermore, the Supreme Court has held that absolute immunity also shields supervising prosecutors from individual liability for lawsuits resulting from a subordinate's discretionary actions. See Van de Kamp v. Goldstein, --- U.S. --- , 129 S.Ct 855, 863-64 (2009) (dismissing suits against supervising prosecutors for failing to adequately train or supervise subordinate district attorneys).

Plaintiff alleges that both the prosecuting attorneys as well as the supervising members of the district attorney's office are individually liable for their deceptive acts and omissions in failing to turn over exculpatory evidence, which, Plaintiff alleges, ultimately resulted in violations of his constitutional rights. In his opposition, Plaintiff contends that the prosecutors' actions in this case fall outside of the ambit of those duties "intimately associated with the judicial process," and therefore do not warrant the protection of absolute immunity. However, contrary to this assertion,

---

[1] The Imbler court recognized that the granting of absolute immunity "does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." 424 U.S. at 427-28. However, the court balanced this concern with the fear that subjecting prosecutors to individual liability for their decisions would prevent them from vigorously upholding their duty to prosecute. See Id.

**Civil No. 09-1919 (GAG)**                                              7

Plaintiff has failed to allege any of the alternate theories of liability that the Supreme Court has recognized as prosecutorial actions falling outside the umbrella of those acts protected by absolute immunity. See Id. at 861 (recognizing that "absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation . . . when the prosecutor makes statements to the press . . . or when a prosecutor acts as a complaining witness in support of a warrant application."). Instead, the complaint only alleges that these defendants maliciously concealed exculpatory evidence that would have assisted Plaintiff in presenting an adequate defense, and continued to conceal said evidence even after Plaintiff's conviction. Both of these allegations have repeatedly been held to be insufficient to evade the protections of absolute immunity. See Reid, 56 F.3d at 336 (recognizing that "it is 'now [a] well-settled rule that a prosecutor cannot be held personally liable for the knowing suppression of exculpatory information.'"); see also id. (citing Jones v. Shankland, 800 F.2d 77, 78-80, (6th Cir. 1986)) (applying Imbler rule "where prosecutors failed to disclose exculpatory evidence specifically requested by the defense").

Plaintiff's claims against the supervising prosecutors suffer from the same infirmity. Even if Plaintiff were able to prove that the failure to disclose the exculpatory evidence came from a direct order from a supervising prosecutor, such orders would still be protected under absolute prosecutorial immunity. See Van De Kamp, 129 S.Ct. at 863-64 (supervising prosecutors were granted absolute immunity for suits arising from their subordinates failure to adequately follow rules of disclosure). Therefore, Plaintiff's allegations that the supervising District Attorney's failed to properly train their subordinates in the rules of disclosure, are insufficient to overcome the protections of prosecutorial immunity.

For the foregoing reasons, the court finds that Plaintiff has failed to state a valid claim against the Prosecuting Defendants. Therefore, the court **GRANTS** Defendants' motion to dismiss, and **DISMISSES** all of Plaintiff's claims against the prosecuting defendants with prejudice.

### C. *Rivera's State Law Tort Claims Against the Prosecuting Defendants*

Rivera also brings state law tort claims against the Prosecuting Defendants, alleging violations of Article 1802 of the Civil Code of Puerto Rico. Plaintiff alleges that the Prosecuting

**Civil No. 09-1919 (GAG)**                                8

Defendants' failure to disclose the exculpatory evidence constitutes tortious behavior exposing the Prosecuting Defendants to liability for the physical and emotional damages suffered by Plaintiff as a result of his malicious arrest, conviction, and incarceration.

The Puerto Rico Supreme court has held that the courts of the Commonwealth should apply a conditional prosecutorial immunity when analyzing Article 1802 suits against individuals acting in a prosecutorial role. See Romero Arroyo v. E.L.A., 127 D.P.R. 724 (P.R. 1991). Therefore, Puerto Rico courts have held that under certain circumstances a prosecutor can be subject to individual liability for injuries caused while acting in their prosecutorial roles. See id. (recognizing individual liability for prosecutors committing willful misconduct, fraudulent, malicious, or criminal activities).

However, because the foundational federal claims against the Prosecuting Defendants have been dismissed by this court, and the Co-Plaintiffs have voluntarily dismissed their state law claims against these defendants, the court, in its discretion, chooses not to grant supplemental jurisdiction over these Puerto Rico State law claims against the Prosecuting Defendants. Because it is early in the litigation process and the facts surrounding the individual claims against these two defendant parties are not necessarily intertwined, the court chooses to defer judgment on these state claims, as it finds the courts of the Commonwealth to be a more proper forum to apply the state court created conditional prosecutorial immunity. See United Mine Workers of America v. Gibbs, 383 U.S. 715, (1966) ("if [considerations of judicial economy, convenience and fairness to litigants] are not present a federal court should hesitate to exercise jurisdiction over state claims."); see also Fernandez-Vargas v. Pfizer Pharmaceuticals, Inc., 394 F. Supp. 2d 407, 416 (D.P.R. 2005) (declining to exercise supplemental jurisdiction over state law claims against two different defendants for two distinct acts). Therefore, the court **DISMISSES** the state law claims against the Prosecuting Defendants without prejudice.

### D.     *Rivera's Claims Against the Officer Defendants*

Plaintiff alleges that the officers assigned to investigate Uster's murder maliciously concealed pertinent and exculpatory evidence that, if disclosed, would have absolved Plaintiff of all crimes and

**Civil No. 09-1919 (GAG)**                                                                 9

identified Colon as Uster's murderer. Plaintiff avers that this evidence was critical in presenting an effective defense and its illicit concealment ultimately resulted in his arrest, conviction, and incarceration. Plaintiff alleges that these actions were violative of § 1983 as well as Puerto Rico state tort law.

In order to state a valid claim under § 1983 Plaintiff must allege (1) that the conduct complained of was committed by a person acting under the color of state law; (2) that the conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States; and (3) that there is a causal connection between the specific defendant being sued and the deprivation of rights. See Parrat v. Taylor, 451 U.S. 527, 535 (1981). In his complaint, Plaintiff avers that the Officer Defendants' actions resulted in violations of his rights protected under the Fourth, Eigth, and Fourteenth Amendments to the U.S. Constitution. In considering whether Plaintiff has formulated a valid claim, the court will consider each of these allegations separately.

### 1.   Fourteenth Amendment Violation

Plaintiff alleges a violation of his due process rights under the Fourteenth Amendment. The due process clause of the Fourteenth Amendment can be applied either under a procedural due process or substantive due process framework. See Senra v. Cunningham, 9 F.3d 168, 173 (1st Cir. 1993). In Albright v. Oliver, 510 U.S. 266, 274-75 (1994), the Supreme Court specifically excluded substantive due process as the basis for a § 1983 claims based on a malicious prosecution claim. Similarly, the First Circuit has held that a procedural due process claim is not actionable unless no adequate post-deprivation remedy is available under state law. See Perez-Ruiz v. Creso-Guillen, 25 F.3d 40, 42 (1st Cir. 1994). Therefore, the availability of an adequate remedy for malicious prosecution under commonwealth law, see P.R.Laws Ann. tit. 31, § 5141 (1991), is fatal to Plaintiff's procedural due process claim. See Torres v. Superintendent of Police of Puerto Rico, 893 F.2d 404, 411 (1st Cir. 1990). As such, the court **DISMISSES** Plaintiff's § 1983 premised upon his Fourteenth Amendment violation claims.

### 2.   Eighth Amendment Violation

When alleging a violation of the rights protected by the Eighth Amendment, a plaintiff must

**Civil No. 09-1919 (GAG)**                                10

allege an injury that has occurred "after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72 n. 40 (1977)). As a matter of law, the Eighth Amendment's protection against cruel and unusual punishment only applies where a plaintiff is a prisoner during the alleged incident. Torres-Viera v. Laboy -Alvarado, 311 F.3d 105, 107 (1st Cir. 2002).

Defendants contend that Plaintiff has failed to state a claim under the Eighth Amendment because he was not a prisoner at the time of the alleged incidents. Plaintiff alleges that the Officer Defendants' failure to disclose exculpatory evidence resulted in his continued incarceration following his conviction for the murder of Uster. Therefore, contrary to Defendants' assertions, it is clear that Plaintiff was, in fact, a prisoner at the time of the alleged violations. Regardless, Plaintiff is unable to state a valid § 1983 claim based on a violation of his Eighth Amendment rights. The Eighth Amendment protects prisoners from cruel and unusual punishment in the conditions of confinement. See Garcia Rodriguez v. Andreu Garcia, 403 F. Supp. 2d 174, 178 (D.P.R. 2005). Plaintiff fails to establish an Eighth Amendment claim as his complaint contains no allegations regarding the conditions of his confinement. See Id. (dismissing Eighth Amendment claims where Plaintiff failed to make allegations regarding conditions of confinement). As such, the court **DISMISSES** Plaintiff's § 1983 premised upon his Eighth Amendment violation claims.

### 3.   Fourth Amendment Violation

"In the First Circuit, 'it is an open question whether the Constitution permits the assertion of a section 1983 claim for malicious prosecution on the basis of an alleged Fourth Amendment violation.'" Rodriguez-Esteras v. Solivan-Diaz, 266 F. Supp. 2d 270, 280 (D.P.R. 2003) (quoting Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001)). However, "the First Circuit has assumed that such a claim, under the right circumstances, would be valid." Id.; see also Britton v. Maloney, 196 F.3d 24, 28 (1st Cir. 1999) (recognizing circuit consensus that "state actors who pursue malicious prosecutions against others may be held to have violated the Fourth Amendment, thereby risking the imposition of liability under 42 U.S.C. § 1983.").

**Civil No. 09-1919 (GAG)**                     11

In <u>Britton</u>, 196 F.3d at 28, the First Circuit assumed for purposes of its analysis that such a claim would be valid, however found the plaintiff's § 1983 claim insufficient, as he had not suffered a "seizure" that imposed any restrictions on his liberty. Contrary to the facts of <u>Britton</u>, Rivera was arrested and detained prior to his trial and was subsequently incarcerated for eight months as a result of the alleged malicious prosecution, the success of which was allegedly predicated upon the illicit concealment of evidence that would have exculpated Rivera and negated the probable cause for his arrest. In <u>Rodriguez-Esteras</u>, 266 F. Supp. 2d at 280, the First Circuit found the plaintiff's contention that he was detained pursuant to improper criminal proceedings sufficient to state a violation of malicious prosecution under the Fourth Amendment. According to the complaint in that case, the plaintiff's detention was predicated upon the investigating officers' failure to divulge exculpatory evidence. <u>See</u> <u>Id.</u> Based on this caselaw, Rivera's allegations are sufficient to overcome the recognized deficiencies of the complaint in <u>Britton</u>.

Defendants also aver that Plaintiff's Fourth Amendment claim is insufficient, because he has failed to allege a lack of probable cause underlying his claim of malicious prosecution. <u>See</u> <u>Roche v. John Hancock Mutual Life Insurance</u>, 81 F.3d 249, 254 (1st Cir. 1996) (recognizing that "if probable cause to arrest and prosecute [the plaintiff] existed, no unconstitutional deprivation occurred."). In his complaint, Plaintiff contends that the investigating officers concealed evidence that "discarded Jonathan Roman Rivera as the murderer." (Docket No. 25 ¶ 34). The court finds that this allegation sufficiently pleads Plaintiff's contention that the investigating officers' knowledge of this exculpatory evidence, negated the determination of probable cause necessary to detain and prosecute Plaintiff.

Based on the foregoing, the court finds that Plaintiff has sufficiently pled a § 1983 claim based upon a violation of his Fourth Amendment rights and, therefore, **DENIES** Defendants' motion to dismiss with regard to this claim.

####     4.     Qualified Immunity

Defendants contend, that even if Plaintiff has sufficiently pled a valid claim under § 1983 against the Officer Defendants, these defendants' actions are immune from suit under the doctrine

**Civil No. 09-1919 (GAG)**  12

of qualified immunity.

The qualified immunity doctrine shields government officials performing "discretionary functions from . . . civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would not have known." Harlow v. Fitzgerald, 457 U.S. 800, 801 (1982); see also Rivera-Ramos v. Ramon, 156 F.3d 276 (1st Cir. 1998). "[A] defendant who claims qualified immunity must do so either [1] on the theory that the asserted right is not clearly established or [2] on the theory that the conduct attributed to him satisfies the test of objective legal reasonableness." Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998).

In Rodriguez-Esteras, the First Circuit answered the issue of qualified immunity under circumstances very similar to the case at hand. In addressing the question whether a plaintiff's Fourth Amendment right to be free from malicious prosecution was clearly established when the alleged violation occurred, the court held that "in light of the near unanimity among the Circuits . . . we believe that a reasonably prudent state actor would have realized that failing to divulge exculpatory evidence . . . thereby causing the detention of a criminal defendant, would violate the Fourth Amendment." Rodriguez-Esteras, 266 F. Supp. 2d at 282. Therefore, in light of this precedent, the court **DENIES** Defendant's request to dismiss the claims against the Officer Defendants based on the defense of qualified immunity.

### E.  *Rivera's Claims Against the Supervising Officer Defendants.*

Rivera also brings claims against the Supervising Officer Defendants, alleging that they "should have known and identified the dangerous tendencies of [the Officer Defendants] to act unlawfully and contrary to the civil and constitutional rights of the citizens of Puerto Rico." (Docket. No. 1 ¶ 41). Plaintiff also alleges that the Supervising Officer Defendants "knew that these officers had received inadequate and deficient training with respect to the carrying out of their duties." (Docket No. 1 ¶ 41).

In cases where the plaintiff alleges that a supervisor's conduct has caused a constitutional deprivation, the Supreme Court has firmly rejected *respondeat superior* as a basis for the liability of supervisory officials. See Votour v. Vitale, 761 F.2d 812, 819 (1st. Cir. 1985) (citing Monell v.

**Civil No. 09-1919 (GAG)**                         13

Department of Social Services, 436 U.S. 658, 694 (1978)).  Plaintiffs asserting such a claim must show that each defendants' acts or omissions directly caused the deprivation of the rights at issue. See Cepedo-Rivera v. Fagundo, 414 F.3d 124, 129 (1st. Cir. 2005) (citing Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91-92 (1st. Cir. 1994)).  Absent direct participation, a supervisor may only be held liable where "(1) the behavior of his subordinates results in a constitutional violation, and (2) the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Pineda v. Toomey, 533 F.3d 50 (1st. Cir. 2008) (internal quotations omitted).  "Allegations that a supervisor failed to train his subordinate officers and that he should be held liable for such failure, without identifying the factual underpinnings of such failure, nor identifying the causal nexus between the failed training and the subordinate's misconduct, are not enough to sustain a claim of liability under Section 1983." Rossi-Cortes v. Toledo-Rivera, 540 F. Supp. 2d 318, 324 (D.P.R. 2008).

   Plaintiff's allegations against the Supervising Officer Defendants are insufficient to sustain a claim of liability under § 1983.  Plaintiff does not identify the factual underpinnings of the Supervising Officers' alleged failures to train their subordinates, nor does he state what "dangerous tendencies" the Officer Defendants exhibited or how the Supervising Officers would have had knowledge of these tendencies. See Rodriguez-Vazquez v. Cintron-Rodriguez, 160 F. Supp. 2d 204, 212 (D.P.R. 2001) (failure to allege prior wrongdoings or supervisor's knowledge of such is fatal to claim of supervisory liability under § 1983).  Furthermore, Plaintiff fails to sufficiently plead the causal nexus between the alleged failures to train and supervise and the actions committed by the Officer Defendants.  See id. (finding broad allegations of inadequate training and supervision, insufficient to support claim of supervisory liability).  Plaintiff's complaint essentially outlines the standard used to determine whether an official is responsible under a theory of supervisory liability.  Such conclusory allegations are insufficient to sustain a § 1983 claim for supervisory liability.  See Rossi-Cortes, 540 F. Supp. 2d at 324 (citing Esteras, 266 F. Supp. 2d at 283) (recognizing that "'[b]iolerplate [sic] language' regarding a defendant's failure to train his subordinates is insufficient

**Civil No. 09-1919 (GAG)**                    14

to sustain a Section 1983 claim.").

IV. **Conclusion**

For the foregoing reasons, the court **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss. The only claims remaining before this court are Plaintiff's §1983 claims against the Officer Defendants based on violations of his Fourth Amendment rights and Plaintiff's state law tort claims against the Officer Defendants. All claims against the Supervising Officer Defendants are **DISMISSED** with prejudice. Plaintiff's state law claims against the Prosecuting Defendants, and Co-Plaintiff 's state law claims against the Officer Defendants and Prosecuting Defendants are **DISMISSED** without prejudice. All other claims are **DISMISSED** with prejudice.

**SO ORDERED**

In San Juan, Puerto Rico this 15th day of April, 2010.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge